**BARRY INDUSTRIES, INC. and Abe Wolfe, Appellants,**

**v.**

**AETNA CASUALTY AND SURETY CO., Appellee.**

**No. 6581.**

District of Columbia Court of Appeals.

Argued Nov. 28, 1972.

Decided March 20, 1973.

Carl P. Fogel, Washington, D. C., with whom Samuel H. Suls, Washington, D. C., was on the brief, for appellants.

Thomas M. Hogan, Washington, D. C., with whom Charles E. Pledger, Jr., and James Heffler, Washington, D. C., were on the brief, for appellee.

Before REILLY, Chief Judge, PAIR, Associate Judge, and HOOD, Chief Judge, Retired.

PAIR, Associate Judge:

The Aetna Casualty and Surety Company (appellee) complained against appellants for the conversion of a new 1966 model Fleetwood Cadillac automobile (Cadillac) demanding, as the subrogee of Delaware Motor Sales of Wilmington, Delaware, $6,114.19 representing the value of the automobile at the time of its conversion.

Appellants denied any liability in the matter and counterclaimed for damages alleging abuse of process and malicious and libelous misrepresentations. Following the completion of discovery procedures, the parties entered into a stipulation of facts and, having agreed to a waiver of the jury demand, the case was submitted.

After consideration of the pleadings, the depositions and the stipulation of facts, the trial court made extensive findings of fact and conclusions of law upon the basis of which it entered judgment for appellee in the amount of its demand and dismissed appellants' counterclaim. This appeal followed. Finding no error, we affirm.

Insofar as here pertinent, the stipulation of facts submitted to the trial court read:

1. On June 4, 1966, a 1966 Fleetwood Cadillac, four door sedan, Serial No. P6256034, owned by Delaware Motor Sales, Inc. of Wilmington, Delaware, was stolen, as set forth by the testimony of John Todd in his deposition of June 8, 1971.

2. Pursuant to a policy of insurance, The Aetna Casualty and Surety Company paid its assured, Delaware Motor Sales, Inc., the sum of $6,114.19 for its loss, and became subrogated therefor to the extent of said payment.

3. Defendants, Abe Wolfe and Barry Industries, Inc., purchased the 1966 Fleetwood Cadillac, identified in paragraph 1., supra, on June 6, 1966, for $6,000.00, as a good faith purchaser from one "Billy Gansky" who was referred to Mr. Wolfe by the latter's wife's cousin, and described by said cousin as "one who deals in cars."

.    .    .    .    .    .

6. By early March, 1967, Aetna learned that the vehicle in question was in the possession of defendants in Washington, D.C., and on April 6, 1967, Aetna wrote to defendant, Abe Wolfe, asking for the return of the vehicle.

It appears from the record that sometime prior to June 6, 1966, appellant Wolfe (appellant), while visiting relatives in Philadelphia, Pa., informed his wife's cousin that he was interested in purchasing a new Cadillac and that the best deal he had found was one requiring a payment of $6,750. The cousin, in no way involved in the automobile business, told appellant that he knew someone "who deals in cars" who could get appellant a better deal. A few weeks thereafter, a Mr. Gansky contacted appellant and negotiations for the purchase of a new Cadillac were commenced. The first demand was for $6,500 but ultimately it was agreed that, if appellant would purchase two new Cadillacs, the price would be $6,000 each. On June 6, 1966, Mr. Gansky personally delivered the Cadillac here involved, together with a Pennsylvania title, to appellant's place of business. Upon request, appellant's uncle (a retired policeman) checked the serial number of the automobile against the serial number appearing on the Pennsylvania certificate of title.

No irregularity having been disclosed, Mr. Gansky was given a check in the amount of $6,000 which he promptly negotiated. In March of 1967, representatives of both the Federal Bureau of Investigation and the D.C. Metropolitan Police Department inquired of appellant concerning the circumstances surrounding his purchase of the Cadillac, and in April of 1967 appellee demanded its return. Appellants did

not comply and in April of 1969 appellee sued them for conversion of the Cadillac.

■ Appellants contend that the court below misinterpreted the law applicable to the facts. We do not agree. The law is well settled that a possessor of stolen goods can never convey good title. Schrier v. Home Indemnity Co., D.C.App., 273 A.2d 248 (1971); Associates Discount Corp. v. Hardesty, 74 App.D.C. 44, 122 F. 2d 18 (1941). Thus the title to the Cadillac which appellants obtained upon its purchase was not conclusive proof of their ownership. *Schrier, supra,* 273 A.2d at 250. *See also* Frei v. Gordon, D.C.App., 215 A.2d 488 (1965). Notwithstanding this familiar principle of law, appellants, relying on *Schrier*, assert that the case was a proper one for the application of the doctrine of "superior equities" and that if the doctrine had been applied, appellee would not have been entitled to recovery.

In the *Schrier* case, the insurer, claiming title as subrogee under an insurance policy, brought suit to recover the value of an automobile which had been stolen. There, as in this case, the stolen automobile was purchased without knowledge of the theft and efforts to effectuate its return were resisted. Because in that case we were not satisfied that the trial court had adequately considered "the argument that a subrogee, in contradistinction to the actual victim of a theft, cannot recover on a theory of conversion from a party innocent of wrongdoing or culpable negligence", we vacated the order granting summary judgment for the insurer and remanded for further proceedings.

In the instant case the trial court, recognizing that the doctrine of "superior equities" might be involved, framed the issue, "Is this an appropriate case for the application of the rule, as recently stated in *Schrier* (supra) and if so, does the [appellee] possess 'superior equities' . . . . " In a well reasoned opinion reported, in part, in 100 D.W.L.R. 1193, the court concluded that the doctrine was without application but that, even if applied, appellee's equities were superior to those of appellants. In our view, appellee was entitled to recovery under either theory.

In Schrier v. Home Indemnity Co., *supra*, a used automobile was purchased at the used car price from a used car dealer holding himself out as such at his place of business. Under the circumstances, the transaction was of such a character that a purchaser would not ordinarily have reason to suspect an infirmity of title.

■ Here, the individual appellant was the owner of a corporate business employing some 400 people. Presumably, therefore, he was knowledgeable in business affairs. It is, of course, a matter of common knowledge that a Cadillac automobile, such as the one purchased by appellants, is ordinarily available only from a factory authorized new car dealer. Notwithstanding, appellant commenced and completed negotiations with a stranger of whose business, business location, and reputation he knew nothing. Moreover, while the price originally asked was a low $6,500 it soon dropped to $6,000, even though the second Cadillac was never delivered. But more than this, after being put on notice that the Cadillac might have been stolen, appellants—unlike the innocent purchaser in *Schrier*—made no effort to establish their right and title to the automobile.[1]

From our review of the record, we are satisfied that no meritorious "superior equities" claim could have been made. Accordingly, the judgment of the trial court is

Affirmed.

---

1. Appellants' counsel at oral argument acknowledged that appellee's claim represented a cloud upon the title which made the Cadillac unmarketable.